Neel, Stephen E., J.
The United States moves to “stay these proceedings pending the resolution of the federal criminal case against Modem Continental Corporation” (Modem).[1] United States’ Memorandum, at 1. While the United States seeks “a complete stay of this action,” id., it focuses in particular on “two fruits of discovery ... which especially threaten the integrity of the criminal proceedings: (1) depositions or trial testimony of individuals who testified before the grand jury and who may be called to testify in the criminal trial against Modern; (2) physical evidence subpoenaed by plaintiffs in the civil action under Mass.R.Civ.P. 45 that is necessary in the criminal case.”
The Court has previously addressed the second point in a Memorandum and Order on Discovery of Physical Evidence dated April 22, 2008. While that order by its terms was in effect until the June Litigation Control Conference, “at which time the Court will address with the parties the next stage of discovery of physical evidence,” the Court concludes that, going forward, the April 22 order provides a procedure that will allow parties to this case and the United States to address issues of disclosure of physical evidence as and when they need to be resolved.
With regard to “depositions or trial testimony of individuals who testified before the grand jury and who may be called to testify in the criminal trial against Modern,” the Court need only address deposition testimony, because the trial of this case has not yet been scheduled. In deciding the issue, the Court applies the five-part balancing test which the parties agree governs its analysis.[2]
1. Interests of the Plaintiffs in Proceeding Expeditiously, and Prejudice From Delay
As the Court concluded in its Order on Modern’s Motion to Stay, a delay of depositions substantially[3] beyond the current deadline poses a real risk of irremediable loss of witness memories, and perhaps a lesser, but still concerning, risk of witness unavailability for deposition or trial, whether through death, disability, or other circumstance. The resulting prejudice to the plaintiffs’ ability to prove their claims would be substantial.
2. Burden on Defendants
For reasons similar to those just noted, defendants in this action — most or all of which must not only defend against plaintiffs’ claims, but also defend (or prove) the numerous cross claims in this case, would be similarly prejudiced by lost witness memory or witness unavailability.
The Bechtel defendants nevertheless support the United States’ motion for stay, arguing that discovery in this case has become unfair because (1) the indicted *413 parties (Powers Fasteners, Inc. (Powers) and Modem) receive (or will receive) “highly pertinent statements and testimony from the underlying criminal investigations and get to exploit the unequal access to information by continuing to participate actively in depositions," while “(2) the parties not privy to that information . . . are prevented from taking discovery or depositions from those parties who do have it and whose agents and employees indisputably include the most knowledgeable witnesses in this case . . .”[4]
The Bechtel and certain other defendants have previously brought forward the issue of unequal access to information, resulting in the Court’s October 24, 2007 Memorandum and Order on Defendants’ Motion for an Order Directing Powers Fasteners, Inc. to Disclose Grand Jury Materials. The moving defendants initially had sought disclosure of all grand jury transcripts of any witness providing deposition testimony in this civil action. At the hearing on their motion, defendants amended their request to seek only production to any individual whose deposition is taken in this case, and to that deponent’s counsel, of a transcript of his or her grand jury testimony. The Court allowed defendants’ motion as amended,[5] insofar as it struck a balance between the rights of Powers and the rights of the other civil defendants. The Bechtel defendants have not persuaded the Court, in their argument on the instant motion, that a different balance should be stmck.
The second point argued by the Bechtel defendants — that they are unfairly prevented from taking discovery or depositions from Powers, Modem, and their agents or related witnesses — applies to a relatively small number of witnesses, most of whom (i.e., Modern-related witnesses) are scheduled to be deposed shortly. The Bechtel defendants assert that discovery has become unfairly lopsided, arguing that seven Bechtel-related witnesses have already given seventeen days of depositions, and that Bechtel-related witnesses comprise nine of the seventeen depositions scheduled over the next six weeks. Plaintiffs point out that a larger proportion of Bechtel-related deponents is not surprising, given the Bechtel defendants’ role in the construction project, and the relatively small numbers of individuals involved in the project on behalf of other defendants.
Bechtel’s ultimate concern — that “such selective, truncated discovery as has been conducted thus far” cannot result in a fair trial, Bechtel Defendants’ Statement in Support, at 5 — assumes that the Court will allow the case to be tried before all parties to the trial have had a fair opportunity to conduct discovery. The Court has no intention of allowing such a result. On the other hand, a fair staging of discovery, keeping in balance the competing interests addressed in this order and other orders of the Court, should result both in fair discovery and a fair trial. The Court is not persuaded that, at present, the Bechtel defendants’ interests are being unfairly prejudiced such that the case must be stayed.
3. Convenience of the Court in Case Management/Efficient Use of Judicial Resources
A stay of deposition discovery would likely result in extended and piecemeal discovery in this complex case which involves numerous parties and multiple claims and cross claims. See Digital Equipment Corp., 142 F.R.D. at 14. The United States has not identified any adverse impact on the United States District Court’s management of the criminal case or judicial resources if the motion for stay of this case is denied, nor is this Court aware of any.
4. Interests of Persons Not Parties to the Civil Litigation
The United States argues that allowing depositions to proceed in the civil case will provide Modem with information which it otherwise would not acquire through discovery in the criminal case, and subjects prosecution witnesses to questioning that may elicit testimony at variance with their grand jury testimony, or affect their trial testimony. The United States relies on several cases, including Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962), cert. denied, 371 U.S. 955 (1963), and LaRouche Campaign v. FBI, 106 F.R.D. 500, 501 (D.Mass 1985), to support its contention that if this case is allowed to proceed, “the liberal civil mies concerning the taking of deposition may very well be used for criminal defense purposes.” United States’ Memorandum, at 5.
In response, plaintiffs first point out the differences between the criminal and civil cases against Modem. While the factual allegations in the Information brought against Modem recite the evolution of the epoxy bolt system and Modern’s role therein, the actual charges allege in substance that Modem committed fraud in certifying to the government the “character, quality and quantity of work performed in connection with the construction of,” inter alia, the tunnel ceiling. Information, at 8-10. Plaintiffs’ factual allegations in this case include similar recitations regarding the bolt system, but plaintiffs’ claim, in substance, is that Modem acted negligently and recklessly. Moreover, plaintiffs’ third amended complaint asserts similar claims against sixteen other defendants. Thus, while the cases involve overlapping evidence as to Modem, they are by no means mirror images of one another.
Plaintiffs also point out that Campbell involved “a litigant using a civil case to obtain discovery from the government as to a possible case it might have against him.”[6] Kozyak v. Poindexter (In re Financial Federated Title & Trust, Inc.), 252 B.R. 834, 839 (Bankr. S.D.Fla. 2000). Similarly, in LaRouche Campaign v. FBI, 106 F.R.D. 500 (D.Mass. 1985), also cited by the United States, the circumstances were very different from *414 those here. After stating “the general proposition that the broad rules of civil discovery cannot be used to circumvent the more restrictive rules of criminal discovery,” id. at 501 (citing, inter alia, Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 380 (D.D.C. 1977) (“It is well-established that a litigant should not be allowed to make use of the liberal [civil] discovery procedures ... to avoid the restriction on criminal discovery”), the court addresses the plaintiffs’ contentions, and finds them “unpersuasive.”
First, the closeness in proximity in the filing of this case after the initiation of the criminal investigation, and the similarity in the subject matter, i.e. credit card transactions, of the two cases vitiates against plaintiffs argument that the two cases are separate and distinct actions. Moreover, plaintiffs cannot receive information through the “backdoor” that which cannot be obtained through the front; in other words, by only directing discovery requests to the Bank defendants, plaintiffs cannot circumvent the discovery rules in criminal proceedings.
(Emphasis in original.)
The circumstances in Campbell and LaRouche plainly suggest that the plaintiffs therein brought those civil actions in response to criminal investigations and for the specific purpose of obtaining discovery to which they would not be entitled in parallel criminal proceedings against them. Indeed, the inference in LaRouche is inescapable, where the court pointedly notes “the closeness in proximity in the filing of this case after the initiation of the criminal investigation, and the similarity in the subject matter.”
In the present civil case, brought against Modern nearly two years before the recent federal criminal charge, Modem’s potential acquisition of discovery relating to the criminal case is a coincidental byproduct of plaintiffs’ claims, not a purposeful search for information set in motion by Modern. The rationale for staying such discovery under the principles enunciated in Campbell and LaRouche is correspondingly weaker. As the court in Campbell observed, “[i]n some situations it may be appropriate to stay the civil proceeding ... In others it may be preferable for the civil suit to proceed — unstayed. In a proper case the trial judge should use his discretion to narrow the range of discovery.” Campbell, at 487.
The Court has in this case implemented the latter suggestions, through various orders addressing different parties’ concerns about information that may otherwise be disclosed during discovery in either the civil or criminal proceedings. The United States refers to one example, the January 16, 2008 Order concerning disclosure of grand jury materials. Other orders are referred to herein.[7]
The Court concludes that, in the circumstances presented here, any effect of civil deposition discovery on the United States’ criminal prosecution of Modem does not outweigh “the strong presumption in favor of discovery” in a civil case which the government must overcome in its request for a stay. United States v. Gieger Transfer Serv., 174 F.R.D. 382, 385 (S.D.Miss. 1997).
5. Interest of the Public in Pending Civil and Criminal Litigation
As the United States correctly points out, the public interest in “seeing the federal criminal [law] enforced on the largest public works project in the United States . . .” is substantial. United States’ Memorandum at 2. The United States’ characterization of the public interest in the civil case, however, is in the Court’s view incomplete.
It is tme, as the United States points out, that plaintiffs have recovered $10 million in two settlements; it is also true that plaintiffs’ goal of shining a “bright light” on the facts and circumstances of the tunnel ceiling collapse is advanced by the B/BP Statement of Facts (as part of its settlement with state and federal authorities) regarding the tunnel collapse. What needs also to be recognized, however, is that the civil case includes as defendants the principal designers, suppliers, and contractors in the construction of the tunnel ceiling — seventeen in all — all of which are alleged to have provided negligent or defective products and services, in a case which in the Court’s experience is about as complex as one will see in civil litigation. The federal criminal case focuses on but one of those defendants. Moreover, the public interest and attention to the civil case has been extensive and continuing; indeed, the Boston Globe at one point moved to intervene in this case.[8]
The United States’ rejoinder — that settlements with civil defendants will fail to shine the “bright light” on the facts and circumstances of the ceiling collapse— ignores the reality that (1) not every defendant may settle, and (2) the public has an interest in an early resolution, whether by settlement or by trial, of the claims against the myriad design professional, supplier, and contractor defendants in this case — prominent players in the construction industry which have been, for two years already, under a cloud not only on their respective reputations but, it may be imagined as to some, on their continued viability. Nor is it likely, as the United States argues, that the parties will continue to negotiate settlement (at least with the alacrity that has resolved claims in the amount of $ 10 million to date), if discovery is stayed. More likely is the relaxation, or even cessation, of settlement efforts predicted by plaintiffs counsel at the hearing on this motion.
In sum, the Court concludes that considerations of the public interest, weighed with the other four factors addressed above, does not satisfy the burden which the United States must cany to merit the stay it seeks.
*415 ORDER
For the reasons and to the extent stated above, the United States’ emergency motion to stay proceedings is DENIED.

The Bechtel defendants filed a “Position Statement” in support of the United States' motion for stay. Modern has moved separately for a stay as to discovery of Modern-related witnesses. See Memorandum and Order on Modem’s Motion for Protective Order, dated July 29, 2008 (Order on Modern’s Motion for Stay). Plaintiffs oppose any stay.

See Nowaczyk v. Matingas, 146 F.R.D. 169, 174 (N.D.Ill., E.Div., 1993) (“The Court must weigh five competing interests: (1) The interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) The burden which any particular aspect of the proceedings may impose on defendants; (3) The convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) The interests of persons not parties to the civil litigation; and (5) The interest of the public in pending civil and criminal litigation.” (Citation omitted.)

At the hearing on this motion, the United States estimated that the criminal case against Modem might be tried between one and two years from now.

The Bechtel defendants’ third basis for what it argues is the unfair progress of discovery is the lack of access to the physical evidence in the custody of the United States and the Commonwealth, addressed above.

Specifically, the Court ordered that "upon request by any prospective deponent in this case who has given testimony before a grand jury investigating the ceiling collapse and death of Milena Del Valle, Powers shall at its option either (1) produce the transcript of such testimony if such has been provided to it in the criminal action, or (2) refrain from participating in the deposition of that witness. Liaison counsel are requested to draft an order of confidentiality as described above.”

“A taxpayer about to be indicted for fraud carries a heavy burden when he asks to inspect the Government’s criminal files containing reports especially prepared with criminal prosecution in mind.” Campbell at 487-88.

The United States acknowledged as recently as July 9, 2008, before the United States Bankruptcy Court, that this Court “has granted us much of the relief that we have sought . . .” Transcript at 33. The United States also informed the Bankruptcy Judge that it intended to seek a stay of this case. Id. at 34.

In April 2007, the Globe filed an Emergency Motion to Intervene for the limited purpose of opposing the two motions that “seek to restrict the public’s right of access to the documents produced in discovery in this case.” The Globe’s claimed interest in the current action was in “assert[ing] the public’s interest in full access to documents that might explain how the biggest and most expensive public works project in the Commonwealth’s history — the Big Dig — came to collapse, killing an innocent motorist . . .” Emergency Motion to Intervene, at 1-2. The Court denied the motion, noting that “the Globe has already used public record laws to inspect public records related to Central Artery/Tunnel project, and there is no indication that the Globe’s access to public documents at issue in this case would be significantly frustrated by the denial of its motion.” Memorandum of Decision and Order on The Globe Newspaper Company’s Motion to Intervene, at 3-4 (May 23, 2007).