**Glen Loley Jr., Petitioner/Appellee,**

**v.**

**Department of Employment and Training,
Navajo Nation, Respondent/Appellant.**
**Decided August 12, 1999**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and SLOAN* (*by special designation), Associate Justices.

Thomas W. Christie, Esq., Navajo Nation Department of Justice, Window Rock, Navajo Nation (Arizona), for the Respondent/Appellant; and Mary Dickman, Esq., DNA-People's Legal Services, Inc., Crownpoint, Navajo Nation (New Mexico), for the Petitioner/Appellee.

Opinion delivered by YAZZIE, Chief Justice.

The Navajo Department of Employment and Training ("NDET") appeals a decision of the Navajo Nation Labor Commission ("Commission") that reaffirms a previous entry of default and awards default judgment damages. NDET asks this Court to reverse the Commission's reaffirmation and damages award and remand this case for a hearing on the merits. We affirm the entry of default, reverse the damages award, and remand for a hearing on damages.

## I

Glen Loley Jr. ("Loley") filed his complaint with the Commission on November 3, 1997, asserting that he had been wrongfully terminated by the NDET. To briefly summarize the following facts, the NDET's actions in this Commission suit were as such: the NDET filed a timely answer to the initial complaint, but did basically nothing thereafter. The NDET did not answer the amended complaint; it did not respond to Loley's discovery requests; it did not respond to Loley's motions for default judgment; it did not respond to Loley's motion to compel discovery; it did not act on the Commission's order compelling responses and discovery; and it did not submit its calculation of damages, as ordered.

On November 18, 1997, the Commission issued a Notice of Hearing on the evidence to be held on December 30.[1] On December 8, 1997, the NDET filed its answer to Loley's complaint; this answer was late.[2] On January 16, 1998, Loley filed a Motion to Amend Complaint. On this same day, the NDET timely submitted its pre-hearing statement, but never responded to the Motion to Amend. The Commission granted Loley's motion. The Commission then served the NDET with a Subpoena Duces Tecum on Loley's First Set of Interrogatories and Request for Production of Documents on January 22, 1998. Loley filed his amended complaint on January 30, 1998.

The NDET never responded to these discovery requests. On February 26, 1998, Loley filed a motion for default judgment, and a motion to compel the NDET to respond to discovery requests. The NDET did not respond to either motion. The Commission issued an Order Compelling Responses to Amended Complaint and Discovery Requests. The NDET took no action to respond to this order. On March 31, 1998, Loley filed a Renewed Motion for Default Judgment on the grounds that the NDET had not filed an answer to his amended complaint, and that the NDET had not responded to the ordered discovery requests. The NDET again failed to respond. The Commission entered default against the NDET on April 13, 1998, stating as its reason: "[The NDET] failed to answer the amended complaint as ordered by the Labor Commission on March 18, 1998...." The order referred to in this reasoning also included the order to comply with discovery requests.

On May 4, 1998, the NDET finally filed its answer to the amended complaint, several months late. The Commission ordered both parties to submit documentation of damages by August 28, 1998. Loley timely submitted his Calculation of Sum Certain Damages, but the NDET submitted no documentation as ordered by the Commission. However, the NDET filed a response to Loley's Calculation of Sum Certain Damages, albeit two weeks late. The Commission did not hold a hearing on damages, but awarded damages using the documents before it.

On November 9, 1998, the Commission issued its final decision reaffirming its entry of default and awarding Loley his requested damages ($49,081.52 in back pay and fringe benefits), and $1,680.00 in attorney's fees and costs and other non-monetary damages. The NDET appealed.[3]

---

1. The hearing date was continued several times on motions by Loley, largely because of the NDET's lack of participation, especially during discovery.

2. Rule 9 of the Commission's rules of procedure states, in part: "The Respondent shall file a written answer to the complaint with the Commission within 10 days after the receipt of the notice of hearing." Here, the answer was filed some 20 days after the notice of hearing.

3. We note that "judgment by default" is actually a two-step process: first, the entry of default, which assigns liability in a case; and second, the default judgment, which actually awards damages based on the prior determination of liability. The NDET's appeal following the default judgment was timely, because an appeal based on an entry of default would be an interlocutory appeal, which this Court will not entertain.

## II

These are the issues on appeal: 1) Is the Commission's entry of default against the NDET barred by the Navajo Sovereign Immunity Act; 2) Was the Commission's entry of default an abuse of discretion; 3) Did the Commission have jurisdiction over Loley's claims; and 4) Was the NDET denied due process of law because there was no hearing on damages.

## III

The Navajo Preference in Employment Act "NPEA" at 15 N.N.C. § 612(B)(1)(c) (1995) and the Commission's Rule 9 grant the Commission authority to enter default for a party's failure to file an answer to a complaint or refusal to abide by its orders. However, the Navajo Sovereign Immunity Act ("Act") states as follows: "Any claim against the Navajo Nation or any public entity, officer, employee or agent thereof, which is filed pursuant to this Act, is deemed generally denied sixty (60) days after valid service of the complaint...." 1 N.N.C. § 555(B) (1995). This protection against entry of default is also included in 15 N.N.C. § 612(C) (1995) of the NPEA: "Any attempted enforcement of a Commission order or decision directing payment of money by the Navajo Nation or any of its governmental entities shall, with respect to the extent of any liability be governed by the Navajo Sovereign Immunity Act, 1 NNC §§ 551 *et seq.*, as amended." In the present case, because Loley requested monetary damages in the form of back pay, his complaint fell under the scope of the above mentioned statutes. The Commission was obliged to follow the sovereign immunity clauses, as Loley was requesting this monetary relief. Therefore, if the Commission had entered default against the NDET, based solely on its failure to answer Loley's complaint, the default would be barred by the Act. That is not the case here.

It would be unconscionable for this Court to shield a Navajo Nation government agency from an entry of default arising from its continuous refusal to participate in a legal proceeding. The complete refusal of a government agency to participate in a legal proceeding appears to be quite uncommon in other jurisdictions as well. We have found only two cases, both from Puerto Rico, that are factually similar to this case.

In *Morales v. Secretary of Health and Human Services*, a plaintiff was denied disability insurance benefits by Health and Human Services, and appealed the decision to the federal district court. See 103 F.R.D. 380, 380-81 (D.P.R. 1984). The defendant Secretary did not file an answer within 60 days, nor was an answer filed even after a one month extension to file was granted by the court. *Id.* at 381. The district court held that the government's immunity from suit, based on Rule 55(e) of the Federal Rules of Civil Procedure, did not relieve the Secretary of her "duty to defend cases or obey the court's orders;" thus, default

judgment was appropriate.[4] _Id._ at 382.

Similarly, in _Alameda v. Secretary of Health, Education and Welfare_, the First Circuit addressed another government "failure to participate" scenario arising in Puerto Rico. See 622 F.2d 1044, 1045 (1st Cir. 1984). _Alameda_ is factually similar to this case: although the Secretary filed answers to appeals of its social security disability decisions, the Secretary then "repeatedly failed ... to honor the orders of the district court to file legal memoranda in support of the administrative decisions." _Id._ at 1045. The Circuit Court addressed the Secretary's claim that judgments by default could not be entered against the United States, pursuant to F.R.C.P. 55(e). _Id._ at 1046. The Circuit Court affirmed the lower court's finding that such a construction of Rule 55(e) would "leave the court powerless to require the Secretary to comply with lawful court orders." _Id._ at 1046. The authority to order such submission of documents, and similar court-related functions, is "an inherent power, governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." _Id._ at 1047 (citing _Link v. Wabash R.R. Co._, 370 U.S. 626, 630-31 (1962)).

Our decisions on defaults are in line with the reasoning of the two cases mentioned. _See, e.g., Billie v. Abbott_, 6 Nav. R. 66, 76-77 (1988) (holding that a default judgment will serve to prevent "continual delay" and the delayed party's uncertainty as to his rights); _Chavez v. Tome_, 5 Nav. R. 183, 186 (1987) (holding that an adjudicatory authority "has the discretion to impose sanctions, including entry of judgment against a defendant for failure to obey discovery orders"); and _Wilson v. Wilson_, 3 Nav. R. 145, 147 (1982) (holding that "[i]f a party before the court abuses the court process, (as in a failure to comply with discovery orders) there is the power to rule that that party has given up his right to be heard.").

While a Navajo Nation government agency need not file an answer to a complaint under 1 N.N.C. § 555(B), it is not free to extend that privilege to ignore the valid orders of the Commission (or a court for that matter). Once the Navajo Nation government has been afforded its sovereign protection, it will be held to the same standards and responsibilities of any litigant. A private litigant who had conducted himself as the NDET did in this case — ignoring orders, motions, and discovery requests — would be in default. We will not permit the Navajo Nation government to abuse our legal process by picking and choosing when and how to participate. Our courts and administrative tribunals should not "sit back and do nothing when [their] orders are disobeyed without even the courtesy of an

---

4. Rule 55(e) of the F.R.C.P. provides that: "No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court," whereas our "no-default" rule says, "Any claim against the Navajo Nation or any public entity, officer, employee or agent thereof, which is filed pursuant to [the Sovereign Immunity] Act, is deemed generally denied sixty (60) days after valid service of the complaint ...; and any such claim shall otherwise proceed in the same manner as upon the filing of such general denial thereof." 1 N.N.C. § 555(B). While not perfectly analogous in wording and function, they both serve to protect their respective governments from _nihil dicit_ judgments.

explanation." See *Morales*, 103 F.R.D. at 382. To find otherwise would mean trampling on the legal rights of a party seeking relief against the Navajo Nation under Navajo Nation laws.

Simply stated, the actions of NDET in this case amount to inexcusable neglect. This kind of behavior has been examined before by other courts, with the same result: if a party neglects to participate for inexcusable reasons, then default is appropriate. *See, e.g., Taylor v. City of Ballwin, Missouri*, 859 F.2d 1330, 1333 (8th Cir. 1988); *Washington Federal Savings & Loan Ass'n v. Transamerica Premier Ins. Co.*, 865 P.2d 1004, 1008 (Idaho 1993). Inexcusable neglect includes actions so egregious and outrageous as to severely prejudice one party. Often these actions will force the prejudiced party to incur exceptionally unnecessary time and financial expenses.

In this case, the NDET's lack of participation exemplifies this standard of inexcusable neglect. It is unjust for the NDET to completely ignore the Commission's orders, precluding Loley from reaching closure to his claims, simply because the NDET is immune from entry of default. Our government should not be allowed to act so irresponsibly. Once the sovereign protection relating to answering complaints has been afforded, the NDET, or any other Navajo Nation governmental body, is held to the same standard as a private litigant. We affirm the Commission's entry of default.

Additionally, as the NDET was not "substantially justified" in its litigation, by failing to participate, the Commission's award of attorney's fees and costs to Loley was appropriate. 15 N.N.C. § 612(A)(2) (1995). We affirm the Commission's ruling on attorney's fees and costs.

## IV

The Commission's entry of default will be set aside for similar reasons that a trial court's entry of default would be set aside. It is a difficult task to meet the burden of setting aside an entry of default. A default may be vacated where there is "irregularity in the proceedings of the court, referee, jury, or prevailing party, or any order or abuse of discretion, whereby the moving party was deprived of a fair trial." Nav. R. Civ. Pro. 59 (a)(2); *see also* Nav. R. Civ. Pro. 55(d). This means entry of default will not be set aside "unless this [C]ourt finds that the judge's discretion was abused in some way...." *Wilson*, 3 Nav. R. at 146; *see Young v. Begay*, 3 Nav. R. 134 (1982); *see also Billie v. Abbott*, 6 Nav. R. at 76.

Based upon the facts, NDET consistently failed to participate in the proceeding against it; thus, its argument that it has somehow been deprived of a fair hearing via unfair actions by the Commission, is difficult to entertain. It is difficult to even assess what action the Commission and Loley would have needed to have taken to get the NDET to participate; apparently, only entry of default stirred the interest of the NDET in this litigation. In essence, the NDET entirely failed to participate to the extent that an entry of default was the Commission's only

option. The record shows that the Commission had sufficient reason to order an entry of default. Therefore, the Commission did not abuse its discretion in entering default against NDET.

## V

The NDET argues that Loley's amended complaint is really an amended charge and should have been amended through the Office of Navajo Labor Relations ("ONLR") pursuant to 15 N.N.C. § 610(B)(5) (1995), and that the Commission would have no subject matter jurisdiction over an amended charge not filed with the ONLR. The Commission did, in fact, have jurisdiction because Loley amended his complaint, not his charge.

> Amendment. A charge may be amended by filing, in the office where the charge was first submitted, a written instrument which sets forth the amendment and any portions of the original Charge revised thereby. To the extent the information reflected in the amendment arose out of the subject matter of the original Charge, the amendment shall relate back and be deemed filed as of the filing date of such Charge. Any portion of the amendment which does not qualify for relation back treatment shall constitute a new charge.

15 N.N.C. § 610(B)(5).

Once the ONLR makes the determination that a litigant has the right to sue, the litigant must file a complaint with the Commission: "Proceedings before the Commission shall be initiated upon the filing of a written complaint by a petitioner with the Commission." 15 N.N.C. § 610(J) (1995). It appears from the record that Loley filed a copy of his charge, including exhibits, as his initial complaint with the Commission. This is supported by the NDET's answer to the initial complaint, which identified that it was answering to sections contained within the original charge. At this point, there is no argument that the documents submitted by Loley constituted a complaint.

The NDET does not specifically cite what part of the amended complaint could reasonably be construed as a new charge. The Amended Complaint form is simply a "fill in the blank" form issued by the Commission. Loley added the relevant information, and in the final section, further brought out allegations pertaining to the use of his medical records in the decision to terminate his employment. However, these allegations are already contained in exhibits contained in the original complaint. We can reasonably conclude that the purpose of the amended complaint was to specifically bring out and focus on certain allegations contained within the original complaint. This certainly does not qualify as the leveling of new charges at the NDET. Hence, as the record demonstrates, Loley amended his complaint with the Commission, not his charge; the law only requires amended charges to return to the ONLR. Therefore, 15 N.N.C. § 610(B)(5) does not apply.

# VI

Finally, we address the issue of whether the NDET's due process rights were violated by the Commission's failure to hold a hearing on damages. Again, we look to the Navajo Rules of Civil Procedure for guidance. Rule 55(b)(2) requires a court, upon entry of default, to hold a damages hearing when the damages are not "sum certain." That is to say, a hearing is required where the damages cannot be readily determined by an agreement, a bill, an account, or similar easily computable damages, as outlined in Rule 55(b)(1). Of course, due process is not violated if a court fails to hold a hearing on damages following an entry of default in the case of "sum certain" damages. We will generally apply the same standard in proceedings before the Commission.

However, where the Navajo Nation is a party, these rules must be applied in light of the purpose of the Sovereign Immunity Act. While the Act should intrude as little into litigation as possible, its purpose is protection of the treasury. See 1 N.N.C. § 554(A) (1995); see also 15 N.N.C. § 612(C). The goal of the "answering immunity" in 1 N.N.C. § 555 is to prevent a petitioner against the Navajo Nation from "raiding" the treasury simply on the basis of a default. One of the most eloquent expressions of the need of this protection is as follows:

> The [Sovereign Immunity] Rule rests on the rationale that the taxpayers at large should not be subjected to the cost of a judgment entered as a penalty against a government official which comes as a windfall to the individual litigant [...]. Since in the final analysis the judgment was against the American taxpayers as a class, the plaintiffs should have been compelled to introduce their books, records, or some other evidence to show that they actually had suffered [a loss]; at the present we have only the plaintiff's untested allegations as to the loss and its extent.

*Campbell v. Eastland*, 307 F.2d 478, 491 (5th Cir. 1962). This is the case at present: while Loley has submitted his sum certain damages, a damages hearing is always necessary for the Navajo Nation to defend its treasury.

There are several relevant issues that the Commission will need to determine to ensure that Loley will not be reaping a "windfall" from the Navajo Nation treasury. At the very least, the Commission will have to hold a hearing to determine the following: whether Loley had mitigating sources of income, such as other employment; whether fringe benefits, and their monetary equivalent, have been properly assessed; and whether it is possible to establish a monetary damage amount for seniority and all other non-monetary benefits should Loley not be reinstated. Of course, if the NDET once again fails to participate in a reasonably scheduled hearing on damages, the Commission is authorized to award Loley a default judgment.

The NDET must be given an opportunity to appear and defend itself at a damages hearing, in light of the compelling interest in the protection of the Navajo Nation treasury. Although the Commission is not required to follow the Navajo

Rules of Civil Procedure, the standard for damages hearings remains unchanged:

> The party in default may appear at the hearing and present evidence as to the amount of damages or the relief to be determined by the court. The party in default may not present evidence or attempt to respond to other allegations of the complaint or claims to which the party is in default.

Nav. R. Civ. Pro. 55(b)(2)(iv). We reverse the Commission's ruling on damages.

## VII

The Commission's entry of default is affirmed. The Commission's award of damages is reversed. This case is remanded to the Commission to give the NDET an opportunity to appear and defend at a hearing on damages.