113 T.C. No. 16


UNITED STATES TAX COURT


JEFFREY R. TAYLOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15544-98.                    Filed September 15, 1999.


        P was convicted of tax fraud.  P seeks an abatement of
interest under sec. 6404(e), I.R.C., for the period during
which a criminal investigation and prosecution took place.
P contends that the delay in proceeding with the civil case
while the criminal investigation and prosecution were
pending was the result of a "ministerial act" by officers or
employees of the Internal Revenue Service within the meaning
of sec. 6404(e)(1)(A), I.R.C.

        <u>Held</u>:  R's decision not to proceed with the civil case
while the criminal investigation and prosecution were
pending is not a ministerial act, and, accordingly, sec.
6404(e)(1)(A), I.R.C., is not applicable.  Therefore, R's
determination disallowing P's request for abatement of
interest is sustained.


Jeffrey R. Taylor, pro se.

<u>Catherine J. Caballero</u>, for respondent.

OPINION

DAWSON, Judge:  This case was assigned to Special Trial Judge Carleton D. Powell pursuant to Rules 180, 181, and 183. All Rule references are to the Tax Court Rules of Practice and Procedure.  The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, Special Trial Judge:  This case involves the denial of a request by petitioner to abate interest under section 6404(e).[1]  On December 14, 1997, petitioner submitted two Forms 843 (Claim for Refund and Request for Abatement) to respondent. The requests pertained to the interest due on the deficiencies for the taxable years 1986 and 1987.  By letter dated May 6, 1998, the requests were denied, and petitioner sought review by the Appeals Office.  On July 9, 1998, the Appeals Office also denied the requests.  On September 21, 1998, petitioner filed a petition for review of that determination with this Court.  At the time that the petition for review was filed, petitioner resided in Tigard, Oregon.

## Background

The facts may be summarized as follows.  Petitioner filed joint Federal income tax returns with his then wife, Janet E.

---

[1]   Unless otherwise indicated, section references are to the Internal Revenue Code applicable for the periods involved.

Taylor (now Janet Eggleston), for the taxable years 1984, 1985, 1986, 1987, and 1988.  On July 6, 1987, respondent's Examination Division commenced an examination of their joint 1984 and 1985 returns.  The examination was expanded later to include the joint returns for the 1986 through 1988 taxable years and the corporate returns for the same periods of Highline Industrial Supply, Inc. (Highline), a corporation wholly owned by petitioner and Ms. Taylor.  Petitioner and Ms. Taylor were the only employees of Highline.  Petitioner worked primarily in sales, and Ms. Taylor primarily maintained the books and records.

On October 13, 1988, the Examination Division referred the case to the Criminal Investigation Division (CID).  It is established procedure of the Internal Revenue Service that when during his investigation a revenue agent in the Examination Division discovers an indication of fraud, he is required to suspend his examination and refer the case to the CID.  See United States v. Gilpin, 542 F.2d 38, 40 (7th Cir. 1976).  CID accepted the case on December 15, 1988, and contacted petitioner and Ms. Taylor on April 12, 1989.  The criminal investigation covered 5 years of the returns of the individuals and Highline. The underlying theory of the criminal investigation was that Highline had paid personal expenses of petitioner and Ms. Taylor and that they had not reported that income on their Federal income tax returns.  Highline did not maintain adequate books and

records, and the investigation essentially focused on attempting to re-create the financial transactions of the corporation. Ms. Taylor, who primarily maintained the financial records, did not cooperate with the investigation, and petitioner's cooperation was limited. The investigators had to issue summonses to third parties to obtain records.

When CID accepts a case, the special agent of CID and the revenue agent of the Internal Revenue Service (Examination Division) may undertake a joint investigation; the special agent, however, controls the investigation. Normally the revenue agent continues to investigate the civil aspects, but the revenue agent would have no contact with the taxpayer unless the special agent was present. The special agent is interested in obtaining evidence of violations of criminal statutes. See United States v. Crespo, 281 F. Supp. 928, 931-932 (D. Md. 1968). On August 19, 1991, the Examination Division placed its examination of petitioner's liability in the "Fraud Suspense" category. At that time the revenue agent prepared a preliminary computation with the understanding that the civil aspects of the case would remain in suspense until the criminal aspects were completed. While the case was in "Fraud Suspense", it was decided by the District Director that the normal period of limitations for the 1984, 1985, 1986, and 1987 tax years would be allowed to expire without

issuing a notice of deficiency. That action was taken after review of the case by the Examination Division and CID.

By letter dated February 27, 1992, petitioner was advised that CID had recommended prosecution and had forwarded the case to the District Counsel's Office of the Internal Revenue Service. District Counsel reviewed the recommendation and forwarded the case to the Tax Division, Department of Justice, on May 22, 1992. On April 14, 1993, an indictment was returned by the Grand Jury sitting in the U.S. District Court for the District of Oregon, charging that petitioner and Ms. Taylor willfully attempted to evade and defeat a large part of their income taxes for the taxable years 1986 and 1987. On September 29, 1993, petitioner entered a plea of guilty to the indictment pertaining to the taxable year 1987 (Count 2). On November 12, 1993, petitioner filed a motion to withdraw his plea. That motion was denied. Petitioner was sentenced to 3 years' probation on December 8, 1993. Petitioner did not appeal from the sentence.

On June 6, 1994, petitioner filed a motion in the District Court for new trial. That motion was denied on July 18, 1994. On November 17, 1994, petitioner filed a motion to vacate under 28 U.S.C. section 2255 (1994). That motion was denied on January 17, 1995. Petitioner appealed to the U.S. Court of Appeals for the Ninth Circuit, which affirmed the denial of relief by the District Court. See United States v. Taylor, 70 F.3d 121 (9th

Cir. 1995). Subsequently, the Supreme Court denied petitioner's petition for a writ of certiorari. See Taylor v. United States, 551 U.S. 1222 (1996).

On March 1, 1994, after petitioner's conviction and prior to the so-called section 2255 proceedings, the District Counsel notified the Examination Division that the criminal aspects had been concluded, and the Examination Division was authorized to proceed with the civil liability. The revenue agent's report was sent to petitioner on April 15, 1994. Thereafter there were several meetings with petitioner and the Examination Division. In November 1994, the case was sent to the Appeals Office. A notice of deficiency was issued to petitioner and Ms. Taylor on February 16, 1996, for the taxable years 1984 through 1988 after the parties were unable to settle the matter satisfactorily. Petitioner filed a petition with this Court at docket No. 8493-96, and, on April 18, 1997, a stipulated decision was entered in that case. The petition filed herein seeks a redetermination of the disallowance of the request for abatement of interest for the 1986 and 1987 taxable years.

## Discussion

Section 6404(e) provides in relevant part:

> (1) In general.--In the case of any assessment of
> interest on--
>
>> (A) any deficiency attributable in whole or in
>> part to any error or delay by an officer or employee of

the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, * * *

\*        \*        \*        \*        \*        \*        \*

the Secretary may abate the assessment of all or any part of such interest for any period.  For purposes of the proceeding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency * * *.[2]

Section 6404(i)(1) provides further that "The Tax Court shall have jurisdiction over any action brought by a taxpayer * * * to determine whether the Secretary's failure to abate interest * * * was an abuse of discretion, and may order an abatement".[3]

While petitioner's application for abatement and petition for review of respondent's denial encompass all the interest due on the deficiencies for the 1986 and 1987 tax years, at the hearing, and, on brief, petitioner has narrowed the scope of his request for abatement to the period between when the criminal investigation began (October 13, 1988, the date of the referral to CID) to when the civil aspects resumed (April 15, 1994, the

---

[2]    Congress amended sec. 6404(e) in 1996 to permit abatement of interest for "unreasonable" error and delay in performing a "ministerial or managerial" act.  Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1452, 1457 (1996).  That standard, however, applies to tax years beginning after July 30, 1996.  TBOR 2, sec. 301(c), 110 Stat. 1457.

[3]    Sec. 6404(i) also contains jurisdictional requirements to bring such an action.  Respondent has not raised any jurisdictional bar, and the Court is satisfied that these prerequisites have been satisfied.

date the revenue agent's report was sent to petitioner). In short, the disputed period encompasses the criminal investigation and criminal prosecution. The record does not show any dereliction of a specific ministerial act during the disputed period.

Petitioner argues that the delay during that period was the result of a delay by employees of the Internal Revenue Service, acting in their official capacity, in performing ministerial acts. See sec. 6404(e)(1)(A). Respondent contends that the delay was not the result of a ministerial act, and, therefore, section 6404(e)(1)(A) does not apply. We agree with respondent.

The Internal Revenue Code does not define a ministerial act. The report of the Senate Finance Committee accompanying the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, states:

> The committee does not intend that this provision will be used routinely to avoid payment of interest; rather, it intends that the provision be utilized in instances where failure to abate interest would be widely perceived as grossly unfair. The interest abatement only applies to the period of time attributable to the failure to perform the ministerial act.

> *       *       *       *       *       *       *

> The committee intends that the term "ministerial act" be limited to nondiscretionary acts where all of the preliminary prerequisites, such as conferencing and review by supervisors, have taken place. Thus, a ministerial act is a procedural action, not a decision in a substantive area of tax law. For example, a delay in the issuance of a statutory notice of deficiency after the IRS and the taxpayer have completed efforts to resolve the matter could be grounds for abatement of interest. The IRS may define a

ministerial act in regulations.  [S. Rept. 99-313 (1986),
1986-3 C.B. (Vol. 3) 208-209.]

The regulations provide:

The term "ministerial act" means a procedural or mechanical
act that does not involve the exercise of judgment or
discretion, and that occurs during the processing of a
taxpayer's case after all prerequisites to the act, such as
conferences and review by supervisors, have taken place.  A
decision concerning the proper application of federal tax
law (or other federal and state law) is not a ministerial
act. [Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin.
Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).]

Petitioner argues that the refusal to continue the civil

investigation and proceeding, when the criminal investigation

commenced, was the result of a ministerial act.  Initially, we

note that the assumption that the civil investigation terminated

is incorrect.  A tax fraud investigation contains both criminal

and civil aspects.  It is only when the criminal case is

forwarded to the Department of Justice that "the criminal and

civil aspects of a tax fraud case begin to diverge."  United

States v. LaSalle Natl. Bank, 437 U.S. 298, 311 (1978).  In a

joint investigation with the Examination Division and CID, the

investigation is controlled by CID, and to that extent it may be

said that the criminal aspects dominate the investigation.  But,

even then, as the Court noted in United States v. LaSalle Natl.

Bank, supra at 311-312:  "The Government does not sacrifice its

interest in unpaid taxes just because a criminal prosecution

begins."  Moreover, the civil fraud additions to tax (see sec.

6653(b)), as a part of the civil tax liabilities, are very much a part of the investigation.

There is, however, a more fundamental error in petitioner's reasoning. The gravamen of the argument from petitioner's point of view is that the decision to hold in abeyance the civil tax resolution procedures is simply a ministerial act. As we have noted, the criminal and civil aspects of a tax fraud investigation are inextricably intertwined. But there is no question that once the criminal investigation begins there is a clear distinction between ultimate procedural avenues that each takes, and "It has long been the policy of the I.R.S. to defer civil assessment and collection until the completion of criminal proceedings." Badaracco v. Commissioner, 693 F.2d 298, 302 (3d Cir. 1982), affd. 464 U.S. 386 (1984).

This policy is predicated on various considerations. The often cited reason is potential conflict between avenues of civil and criminal discovery if parallel civil and criminal cases proceed. Compare Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962), with Commissioner v. Licavoli, 252 F.2d 268 (6th Cir. 1958), affg. T.C. Memo. 1956-187. But there are other considerations such as where a party or witness may be put in a situation of testifying when the testimony may be incriminating. See United States v. Kordel, 397 U.S. 1 (1970). There is also the confusion inherent in two cases that are proceeding

concurrently.  It is for these reasons that generally the courts have held the civil action in abeyance while the criminal prosecution goes forth.  See id. at 12 n.27.  See also United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555 (1983), where the Supreme Court held that the delay by the United States in instituting a civil forfeiture action pending resolution of criminal charges was reasonable.

While the general policy of the Internal Revenue Service may be not to proceed with the civil aspects, that policy must be implemented in each case.  In Campbell v. Eastland, 307 F.2d at 487, a case involving civil discovery while criminal proceedings were pending, the Court of Appeals noted:

> The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority:  which case should be tried first.  Administrative policy gives priority to the public interest in law enforcement.  This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

Just as a trial judge must balance the competing interests, respondent's officers must decide whether the civil aspects in a particular case outweigh the interests in the criminal aspects. The decision here was made by not issuing the notice of deficiency and allowing the normal periods of limitations to expire.  A decision is made after an evaluation of the criminal

and civil aspects of the case and is not "the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra. Such a decision cannot be considered a "ministerial act."

This holding is consistent with our holding in Lee v. Commissioner, 113 T.C. ___ (1999). In Lee the taxpayer sought an abatement of interest during the period that the case was pending before the Court. The tax liabilities involved in Lee arose out of a tax shelter. There were criminal indictments that involved the promoters. We rejected the taxpayer's abatement argument noting that the mere passage of time during litigation "does not establish error or delay by the Commissioner in performing a ministerial act." Lee v. Commissioner, supra (slip op. at 9). We further found that the delay

> was a result of the Government's litigation strategy to dispose of the criminal indictments first and the Court's disposition of the parties' procedural motions. Respondent's decision on how to proceed in the litigation phase * * * necessarily required the exercise of judgment and thus cannot be a ministerial act. [Id.]

Although in Lee the delay occurred after the taxpayer filed a petition in this Court and the delay in the present case occurred before the issuance of the notice of deficiency, this does not appear to be a noteworthy distinction. The timing of the decision to defer the civil proceedings until resolution of the criminal aspects does not detract from the fact that the

exercise of judgment is required in making such a decision.  The decision here was not a ministerial act.  Accordingly, section 6404(e)(1)(A) is not applicable.  We, therefore, do not need to consider whether respondent abused his discretion or whether the delay was attributable to petitioner.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.