T.C. Memo. 2000-80


UNITED STATES TAX COURT


FRANK J. GORGIE AND ROSALIA GORGIE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20572-98.                    Filed March 9, 2000.


Frank J. Gorgie and Rosalia Gorgie, pro sese.

<u>Jordan S. Musen</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WELLS, <u>Judge</u>:  Respondent determined that petitioners are
not entitled to an abatement of interest pursuant to section
6404(e)[1] for their 1986, 1987, and 1988 taxable years.

_____

[1]     Unless otherwise indicated, all section references are to
the Internal Revenue Code as amended, and all Rule references are
to the Tax Court Rules of Practice and Procedure.

Petitioners meet the net worth limitations of section 7430(c)(4)(A)(ii) and timely filed their petition pursuant to section 6404(i) and Rule 280.

The only issue for decision is whether respondent's refusal to abate interest for the period between May 8, 1989 to October 3, 1990, was an abuse of discretion.

FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The parties' stipulations are incorporated into this Memorandum Opinion by reference and, accordingly, are found as facts in the instant case. Petitioners resided in Huntington Beach, California, when they filed their petition in the instant case.

On May 8, 1989, the examination of petitioners' 1986 and 1987 tax years was assigned to Internal Revenue Agent Patricia Mazon. The examination focused specifically on whether Frank Gorgie (petitioner) reported all income received from his employer National Energy Research Corp. (NERC).

On May 12, 1989, Agent Mazon mailed an appointment letter to petitioners. Enclosed with the appointment letter was Form 4564, Information Document Request Form (IDR) 1, which asked for, among other things, books, records, bank statements and canceled checks relating to income reported on petitioners' Schedule C, Profit or Loss From Business, for the years under examination. On May 22,

1989, petitioner responded to Agent Mazon's letter by telephone, informing her that John Berg had a power of attorney from petitioners.

On May 24, 1989, Mr. Berg called Agent Mazon and left a message, stating that he would be back on May 28, 1989. After trading telephone messages, on May 31, 1989, Agent Mazon spoke with Mr. Berg and scheduled an appointment for June 27, 1989. On June 21, 1989, Mr. Berg called Agent Mazon to reschedule the appointment for July 5, 1989.

On July 5, 1989, Agent Mazon met with Mr. Berg and petitioner at Mr. Berg's office. At the meeting, petitioner provided some, but not all, of the requested bank records. Petitioner did not provide complete bank records for two savings and loan accounts, which prompted Agent Mazon to tender IDR 2 requesting those documents. They scheduled a second appointment for July 6, 1989.

On July 6, 1989, Agent Mazon met with Mr. Berg at Mr. Berg's office. Agent Mazon tendered IDR 3 asking for additional bank and nonbank records relating to petitioners.

On July 14, 1989, Agent Mazon called Mr. Berg and left a message requesting an appointment with petitioner Rosalia Gorgie and petitioners' return preparer. Agent Mazon requested that the appointment take place on August 1 and 2, 1989. On July 27,

1989, Mr. Berg called Agent Mazon to cancel the proposed August appointments.

On August 28, 1989, Agent Mazon called Mr. Berg and proposed a conference with petitioner Rosalia Gorgie for September 21, 1989. On September 21, 1989, Agent Mazon met with Mr. Berg and submitted IDR 4, requesting bank records for 1986 (which were the subject of IDR 2, but which were still not received) as well as other bank records and documentation supporting alleged loan repayments and information on how petitioners arrived at their income in their returns. Because of her poor health, Rosalia Gorgie did not attend the September 21, 1989, meeting.

By letter dated October 28, 1989, Mr. Berg stated that petitioners were unable to locate certain requested bank records. Mr. Berg then requested that a 30-day letter be issued.

Because petitioner did not provide all requested bank statements, Agent Mazon had to obtain from NERC copies of NERC checks that were deposited into petitioner's bank accounts. In July, September, and November of 1989, Agent Mazon compiled NERC check summaries for the purpose of determining the total amounts of NERC checks deposited into Frank Gorgie's accounts.

On December 4, 1989, Agent Mazon discussed the case with her manager, Ley Malilay. Agent Mazon and Mr. Berg spoke on December 6, 1989, and scheduled an appointment for December 8, 1989. On December 6, 1989, petitioners' 1988 tax year was opened for

examination by Agent Mazon. The examination for the 1988 tax year concerned the same unreported income issue as the 1986 and 1987 years.

On December 8, 1989, Agent Mazon met Mr. Berg and told him that the 1988 tax year had been opened for examination. Agent Mazon tendered IDR 5, which asked, among other things, for information supporting certain loan repayments.

On December 19, 1989, Agent Mazon received a response to IDR 5. The response dated December 13, 1989, also asked respondent for a second time to issue a 30-day letter.

During the course of her investigation, Agent Mazon believed that some of what petitioner told her was not true. In particular, petitioner told Agent Mazon that he had an outstanding loan on which he made payments and that there was no unreported income for the years in issue. Agent Mazon discovered the opposite to be true--there was no loan and there was unreported income. These inconsistencies led Agent Mazon to speak with her manager and fraud coordinator about the proper course of action. She was given approval to forward the case to respondent's Criminal Investigation Division (CID), which she did on January 11, 1990. On April 4, 1990, Agent Mazon received a package from CID declining the fraud referral.

On April 23, 1990, Agent Mazon mailed to Mr. Berg a Form 4549, Income Tax Examination Changes. On June 1, 1990, Agent

Mazon requested transcripts from the Fresno Service Center in order to reconcile and verify amounts shown on petitioners' tax returns with amounts reflected in respondent's computer system.

On July 19, 1990, Agent Mazon's manager, Ms. Malilay, requested that work on the case be suspended pending resolution of a related audit of NERC. On September 19, 1990, Agent Mazon wrote a report and attached Forms 886-A, Explanation of Items. On October 3, 1990, Agent Mazon mailed out the 30-day letter to petitioners and mailed a copy to Mr. Berg. The 30-day letter proposed adjusting unreported income for all 3 years at issue. The 30-day letter also proposed the assertion of the fraud penalty and, in the alternative, the negligence penalty. By cover letter dated October 26, 1990, petitioners filed a protest. The protest letter was received on November 7, 1990.

On December 4, 1990, the case file was transferred to respondent's San Diego Appeals Office. On February 13, 1991, respondent mailed a letter to Mr. Berg notifying him that the case was assigned to the San Diego Appeals Office. On April 29, 1991, Appeals Officer Carol Holt wrote Mr. Berg informing him that the case had been assigned to her. On September 6, 1991, petitioners executed a Form 870, settling the case. In the Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, petitioners agreed to the additional income amounts that Agent Mazon

determined for years 1986 and 1987 and to a portion of the amounts determined for 1988.  The parties agreed to waive application of the fraud penalty and agreed to the assertion of the negligence penalty.

On November 28, 1990, petitioners made a designated payment of interest in the amount of $752.  Petitioners filed Form 843, Claim for Refund and Request for Abatement, on or around January 23, 1997.  On August 28, 1998, respondent mailed petitioners' Final Determination letter disallowing their claim to abate interest for tax years 1986, 1987, and 1988.  As of the date of the August 28, 1998, Final Determination letter, petitioners' total interest and assessed interest for the years at issue was:

| Year | Total Interest | Assessed Interest |
|------|----------------|-------------------|
| 1986 | $6,245.70      | $1,961.83         |
| 1987 | 25,217.17      | 6,367.64          |
| 1988 | 13,551.06      | 3,235.92          |

OPINION

Pursuant to section 6404(e)(1), the Commissioner may abate part or all of an assessment of interest on any deficiency or payment of tax if either:  (1) The deficiency was attributable to an error or delay by an Internal Revenue Service (Service) official in performing a ministerial act or (2) an error or delay by the taxpayer in paying his or her tax is attributable to a Service official's being erroneous or dilatory in performing a

ministerial act.  See sec. 6404(e)(1).[2]  To obtain relief, the
taxpayer must not cause a significant aspect of the delay.  See
id.  Section 6404(e) is not intended to be routinely used to
avoid payment of interest; rather, Congress intended abatement of
interest only where failure to do so "would be widely perceived
as grossly unfair."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B.
(Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1985), 1986-3 C.B.
(Vol. 3) 1, 208.  The standard for reviewing the Secretary's
decision is abuse of discretion.  See sec. 6404(i).

The term "ministerial act" means a procedural or mechanical
act that does not involve the exercise of judgment or discretion,
and that occurs during the processing of a taxpayer's case after
all prerequisites to the act, such as conferences and review by
supervisors, have taken place.  See sec. 301.6404-2T(b)(1),
Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13,

---

[2]    Congress amended sec. 6404(e) in 1996 to permit abatement of
interest for "unreasonable" error and delay in performing a
ministerial or "managerial" act.  Taxpayer Bill of Rights 2 (TBOR
2), Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1452, 1457
(1996).  That amendment, however, applies to tax years beginning
after July 30, 1996.  TBOR 2 sec. 301(c), 110 Stat. 1457.

1987).[3]  A decision concerning the proper application of Federal tax law is not a ministerial act.  See id.

Petitioners argue, notwithstanding the settlement they entered into admitting a tax liability due and owing, as well as agreeing to the imposition of a negligence penalty, that the audit was "foisted" upon them by an "inexperienced, naive, and zealous agent who pulled out all the stops" in an attempt to develop a fraud case against them.  Petitioners also maintain that, in any case, the audit should have been completed within a couple of weeks despite the fact that Agent Mazon had been required to examine three tax years and had been required to analyze petitioners' numerous bank account records.  Petitioners' arguments are without merit.

Respondent had difficulty obtaining from petitioner certain bank records, and petitioners, or their representative, canceled or postponed at least two meetings with Agent Mazon. Nonetheless, any delay caused by petitioners in the instant case is secondary to our more fundamental conclusion that respondent's

---

[3]    The final regulation under sec. 6404, sec. 301.6404-2, Proced. & Admin. Regs., was issued on Dec. 18, 1998.  See T.D. 8789, 63 Fed. Reg. 70012 (Dec. 18, 1998).  The final regulation generally applies to interest accruing on deficiencies or payments of tax described in sec. 6212(a) for tax years beginning after July 30, 1996.  See sec. 301.6404-2(d)(1), Proced. & Admin. Regs.  Thus, the final regulation is inapplicable to the instant case, and sec. 301.6404-2T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987), effective for taxable years beginning after Dec. 31, 1978, but before July 30, 1996, does apply.  See sec. 301.6404-2T(c), Temporary Proced. & Admin. Regs., supra.

acts were not ministerial.

Petitioners are particularly upset by the initiation of the criminal fraud investigation because the CID ultimately rejected the instant case as a criminal fraud case.[4] Petitioners also believe that Agent Mazon relied too heavily on the unsubstantiated allegations of fraud by an IRS informant. At the time, however, Agent Mazon found inconsistencies that she believed were badges of fraud, causing her to suspect petitioner of criminal wrongdoing. Moreover, the decision to initiate the fraud investigation was not hers alone. After she consulted with her supervisors, the agreed course was to send the case to the CID, which was within Agent Mazon's province to do and was certainly not a ministerial act.

The time spent investigating whether to impose civil or criminal fraud penalties, regardless of petitioners' guilt or innocence, is not a ground under section 6404(e) that would allow respondent to abate interest. Moreover, this Court has held, in Taylor v. Commissioner, 113 T.C. 206, 211-213 (1999), that the Service's decision not to proceed with a civil tax examination while a criminal tax investigation is pending is not a ministerial act that would warrant the abatement of interest.

In short, the decision to examine petitioners' 1986, 1987, and 1988 taxable years, to conduct a bank deposits analysis on

---

[4] Referral of the case to CID extended the audit by 3 months.

petitioners' numerous bank accounts, to suspend petitioners' audit until a related audit of NERC was completed, and to refer the instant case to the CID are all acts requiring the exercise of judgment and discretion and, therefore, are not ministerial acts. Because there is no ministerial act by respondent's employees or officers that caused delay, respondent could not, pursuant to section 6404(e), abate interest. Accordingly, we uphold respondent's final determination not to abate interest.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.