T.C. Memo. 2000-354


UNITED STATES TAX COURT


DONALD B. HAWKSLEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17785-99.                    Filed November 15, 2000.


Donald B. Hawksley, pro se.

<u>William F. Castor</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial

Judge Robert N. Armen, Jr., pursuant to the provisions of section

7443A(b)(5) and Rules 180, 181, and 183.[1]  The Court agrees with
and adopts the opinion of the Special Trial Judge, which is set
forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

ARMEN, Special Trial Judge:  On June 2, 1999, respondent
issued a notice of final determination denying petitioner's claim
for abatement of interest on a deficiency in petitioner's Federal
income tax for the taxable year 1986.  Petitioner timely filed a
petition with this Court pursuant to section 6404(i) and Rules
280-284.  The issue for decision is whether respondent abused his
discretion by denying petitioner's claim for abatement of
interest.[2]  We hold that respondent did not.[3]

FINDINGS OF FACT

Most of the facts have been stipulated, and are so found.
The stipulation of facts and supplemental stipulation of facts,

---

[1]  Unless otherwise indicated, all section references are
to the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

[2]  To the extent that petitioner's claim for abatement
includes a claim for abatement of tax, penalties, or additions to
tax, see infra Findings of Fact F, it is clear that this Court
lacks jurisdiction to consider such claim.  See sec. 6404(b),
(e)(1); Krugman v. Commissioner, 112 T.C. 230, 237 (1999).

[3]  The Court directed respondent to file an opening brief
within 60 days after the conclusion of the trial and afforded
petitioner the opportunity of filing an answering brief within 30
days thereafter.  Compare Rule 151(b)(2).  Respondent timely
filed an opening brief; however, petitioner chose not to file an
answering brief.

together with the exhibits thereto, are incorporated herein by this reference.

Petitioner resided in Rogers, Arkansas, at the time that the petition was filed with the Court.

A.  Examination of Petitioner's 1985 Return

On July 14, 1986, petitioner filed his Federal income tax return, Form 1040, U.S. Individual Income Tax Return, for 1985. On the return, petitioner listed his address as in Santa Barbara, California.  Petitioner attached to his return a Schedule C, Profit or Loss From Business or Profession.  On the Schedule C, petitioner claimed total  deductions in the amount of $36,145.

Approximately a year later, on July 10, 1987, respondent sent a letter to petitioner, notifying him that his 1985 return had been selected for examination and requesting him to furnish all documentation used in the preparation of that return.

On August 7, 1987, petitioner sent respondent a reply letter, requesting that the examination of his 1985 return be transferred to respondent's office in Modesto, California. Respondent agreed to petitioner's request, and on October 19, 1987, a revenue agent from the Modesto office sent petitioner a letter requesting specific documentation pertaining to the examination of petitioner's 1985 return.

On November 20, 1987, Robert C. Davis (Mr. Davis), a certified public accountant and petitioner's representative under

a power of attorney, Form 2848, Power of Attorney and Declaration of Representative, provided certain information and documentation to respondent.

On December 11, 1987, respondent sent petitioner a 30-day letter at petitioner's new address in Romoland, California.[4] The letter proposed changes to petitioner's 1985 return, including the complete disallowance of the Schedule C deductions in the amount of $36,145.

On January 6, 1988, Mr. Davis sent a reply letter to respondent's revenue agent in Modesto, California. That letter stated in part as follows:

> I am writing to confirm our telephone conversation of December 28, 1987. At that time you stated that you were going to disallow all deductions due to the fact that the amounts originally claimed could not be reconciled to the amounts which were documented upon your audit of my client of [sic] 1985 Form 1040.
>
> I am recommending to my client that we go through the normal channels of appeal in this matter. We would first request a conference with your supervisor to discuss the audit adjustments as you have proposed.

On January 12, 1988, respondent sent Mr. Davis a letter, enclosing receipts and canceled checks that petitioner and/or Mr. Davis had submitted to the revenue agent's group manager in Modesto, California, on January 12, 1988. Presumably, this

---

[4] On Dec. 29, 1987, petitioner executed Form 488-A, Change of Address, reflecting Romoland as his new address. It would appear that petitioner's change of address had come to respondent's attention before petitioner provided formal notification.

documentation had been submitted during the course of the conference with the agent's supervisor.

On September 14, 1988, respondent sent a notice of deficiency to petitioner at petitioner's last known address in Romoland, California. In the notice, respondent determined a deficiency in petitioner's income tax for 1985 in the amount of $9,423. The deficiency was attributable in large part to the complete disallowance of petitioner's Schedule C deductions in the amount of $36,145. In the notice, respondent also determined additions to tax for negligence under section 6653(a)(1) and (2) and for substantial understatement of liability under section 6661.

Petitioner received the notice of deficiency for 1985. However, petitioner did not file a petition with this Court contesting respondent's deficiency determinations. Accordingly, on March 20, 1989, respondent assessed the deficiency in income tax ($9,423) and the additions to tax as determined in the notice.

B. Examination of Petitioner's 1986 Return

On July 13, 1987, petitioner filed his Federal income tax return (Form 1040) for 1986. On the return, petitioner listed his address as in Santa Barbara, California. Petitioner attached to his return a Schedule C, Profit or Loss From Business or Profession. On the Schedule C, petitioner claimed total

deductions in the amount of $23,791. Petitioner also attached to his return a Schedule E, Supplemental Income and Loss. On the Schedule E, petitioner claimed net losses from two limited partnerships in the aggregate amount of $47,304, as follows:

| Partnership | Loss Claimed |
|-------------|--------------|
| Barrington Park | $26,710 |
| Southmark/Envicon | 20,594 |
| | $47,304 |

On April 24, 1989, respondent sent a letter to petitioner in Romoland, California, notifying him that his 1986 return had been selected for examination and requesting that he contact the Modesto, California office in order to schedule an appointment.

From June to October 1989, respondent was contacted on various occasions by Ralph "R.A." Amigron (Mr. Amigron), who claimed to be a certified public accountant and petitioner's representative under a power of attorney.[5] However, respondent did not have on file any power of attorney from petitioner naming Mr. Amigron as petitioner's representative. Accordingly, respondent did not recognize Mr. Amigron as petitioner's representative; rather, respondent undertook to send all correspondence directly to, and deal directly with, petitioner.

Having learned that petitioner may have moved from Romoland,

---

[5] At some point in time before June 1989, petitioner had hired Mr. Amigron as a sales representative for the company for which petitioner worked as a manager. Sometime thereafter, petitioner engaged Mr. Amigron to represent him before the IRS.

California, respondent submitted a Request to Locate Person (PS Form 3241) to the U.S. Postal Service on August 8, 1989. Later that month, on August 18, 1989, respondent received a response from the Postal Service indicating that petitioner's address was in Hemet, California. On that same day, respondent sent a 30-day letter to petitioner in Hemet, proposing changes to petitioner's 1986 return. The record suggests that this letter may not have been received by petitioner.

On September 12, 1989, respondent sent a copy of the 30-day letter to petitioner by certified mail, return receipt requested, at an address in Clermont, Florida.[6] The Postal Service Return Receipt (PS Form 3811) reveals that the letter was received on September 15, 1989, by an agent of the addressee.

In October 1989, respondent received a power of attorney (Form 2848) from Mr. Amigron naming him as petitioner's representative. However, the signature on the power of attorney purporting to be that of petitioner did not match petitioner's signature on other documents in respondent's possession. Accordingly, respondent's Examination Division referred Mr. Amigron to respondent's Inspection Division. Respondent continued to send all correspondence directly to petitioner.

On October 31, 1989, respondent sent a "final notice"

---

[6] Prior to Sept. 12, 1989, Mr. Amigron had advised respondent that petitioner was living in Florida.

version of the 30-day letter for 1986 to petitioner by certified mail at the address in Clermont, Florida.

On March 19, 1990, respondent sent a notice of deficiency to petitioner at petitioner's last known address in Clermont, Florida. In the notice, respondent determined a deficiency in petitioner's income tax for 1986 in the amount of $47,294. The deficiency was attributable in large part to three adjustments: (1) The disallowance of petitioner's Schedule C deductions in the amount of $23,791; (2) the disallowance of petitioner's Schedule E partnership losses in the amount of $47,304; and (3) unreported gain from the sale of shares in United Funds, Inc. in the amount of $29,958.[7] In the notice, respondent also determined additions to tax for negligence under section 6653(a)(1)(A) and (B) and for substantial understatement of liability under section 6661.

Petitioner received the notice of deficiency for 1986. However, petitioner did not file a petition with this Court contesting respondent's deficiency determinations. Accordingly, on August 20, 1990, respondent assessed the deficiency in income tax ($47,294) and the additions to tax against petitioner.

C. Mr. Amigron's Arrest

On May 3, 1991, Mr. Amigron was arrested in California by inspectors of respondent's Internal Security Division in

---

[7] Respondent determined the amount of gain based, in part, on petitioner's failure to demonstrate any basis in the shares. See secs. 1001, 1011(a).

connection with a 4-count felony indictment handed down by a Federal grand jury.  The indictment alleged that Mr. Amigron, a former IRS revenue officer, falsely claimed to be a certified public accountant, and an enrolled actuary, and that he knowingly used false Social Security numbers on tax documents.[8]

D.   Petitioner's Amended Returns for 1985 and 1986

On September 15, 1995, more than 6 years after respondent had assessed the deficiency and additions to tax for 1985 and nearly 5 years after respondent had assessed the deficiency and additions to tax for 1986, respondent's Problem Resolution Office in Little Rock, Arkansas, sent petitioner a letter enclosing a copy of the notice of deficiency for 1986.

One week later, on September 22, 1995, petitioner executed Form 2848, Power of Attorney and Declaration of Representative, naming John H. Peterson (Mr. Peterson), an attorney, and Robert M. Magness (Mr. Magness), a certified public accountant, as his representatives with respect to his Federal income tax liabilities for 1985, 1986, and 1993.

On November 6, 1995, Mr. Peterson sent a letter to respondent enclosing an amended income tax return (Form 1040X) for 1985 for petitioner.  The amended return, which was signed on behalf of petitioner by Mr. Magness, reduced taxable income (as

---

[8]  The record does not disclose the disposition of the indictment.

determined by respondent in the notice of deficiency for 1985) by $29,037. The amended return explained this reduction as follows:

> To reinstate previously disallowed [Schedule C] expenses as follows:
>
> Disallowed on audit    $36,145
> Supplies                (7,108)
>
> Reinstated              $29,037

Mr. Magness also executed, on petitioner's behalf, an amended income tax return (Form 1040X) for 1986, which was submitted to respondent on January 12, 1996. Among other matters, the amended return "reinstated" the previously disallowed Schedule C expenses in the amount of $23,791 and the previously disallowed Barrington Park limited partnership loss in the amount of $26,710. In addition, the amended return reported a basis by gift in the amount of $21,365 in the shares of United Funds, Inc.

Also, on or about January 12, 1996, petitioner submitted to respondent an unsigned and undated copy of a gift tax return, Form 709, United States Gift (and Generation Skipping Transfer) Tax Return, for 1985 for Maxine Hawksley, donor.[9] The gift tax return disclosed, inter alia, a gift of "mutual funds" to "Donald B. Hawksley" of Gainesville, Missouri, in February 1985. The gift tax return also disclosed that the donor's adjusted basis in

---

[9] Presumably, petitioner and Maxine Hawksley are related, but the record does not disclose the nature of the relationship.

the gift was $21,365, and that the value of the gift at the date of transfer was also $21,365.

Later that month, on January 22, 1996, petitioner submitted a Federal income tax return (Form 1040) for 1993, which was executed by Mr. Magness on petitioner's behalf. The return reflected a loss from the sale of petitioner's interests in the Barrington Park and Southmark/Envicon limited partnerships that respondent had disallowed for 1986.

On February 27, 1996, respondent's Problem Resolution Office sent Mr. Peterson a letter regarding petitioner's amended income tax returns for 1985 and 1986. The letter included an itemization of the documents and information that were needed in order to process the amended returns. The letter also stated, in part, as follows:

> The over-riding problem throughout the examination report centers around Mr. Hawksley's failure to keep any kind of contemporaneous record of his business expenses.
>
> Another problem is that Mr. Hawksley's employer provided a copy of a reimbursement policy, which indicated he could have been reimbursed for certain travel, entertainment, and moving expenses, had he applied for same in advance.
>
> The examiner's conclusion * * * that all of Mr. Hawksley's documentation lost validity and confidence was based on a two-fold observation: 1) The documentation provided during the course of the examination was apparently not what was used to prepare the original return, as there were large discrepancies between amounts presented to our examiner and those reported on the return; AND 2) Taxpayer's inability to provide substantiation for one entire expense item--

Supplies - $7,108.

Nevertheless, the letter concluded by stating that for 1986, respondent was prepared to allow the previously disallowed Schedule E Barrington Park partnership loss ($26,710) and the gift tax basis in the shares of United Funds, Inc. ($21,365); however, the letter emphasized that "without proper documentation of the above Schedule C expenses, we will be unable to reconsider that portion of our initial examination findings."

On March 13, 1996, respondent's Problem Resolution Office sent Mr. Peterson a letter stating that "we haven't heard from you yet."

After a response from Mr. Magness on March 20, 1996, requesting, inter alia, additional time to provide the previously requested information and documentation, respondent's Problem Resolution Office agreed to extend the time to April 22, 1996. However, Mr. Magness was advised that if such information and documentation were not received by that time, respondent would allow only the Schedule E Barrington Park partnership loss and the gift tax basis in the shares of United Funds, Inc., and no allowance would be made for disallowed Schedule C expenses for either 1985 or 1986.

The requested information and documentation was apparently not received. Accordingly, on May 27, 1996, respondent abated only $23,785.64 of the original $47,294 assessment of the income

tax deficiency for 1986.  The $23,785.64 abatement for 1986 represented the income tax attributable to respondent's allowance of the previously disallowed Schedule E Barrington Park partnership loss of $26,710 and the gift tax basis in the shares of United Funds, Inc. of $21,365.

E.  Additional Abatements Related to a Problem Solving Day in 1998

On April 22, 1998, petitioner attended one of respondent's Problem Solving Days and provided documentation substantiating $20,222, or 85 percent, of the total deductions ($23,791) claimed by petitioner on his Schedule C for 1986.  Respondent then extrapolated from this substantiation and allowed petitioner $30,723, or 85 percent, of the total deductions ($36,145) claimed by petitioner on his Schedule C for 1985.

On May 11, 1998, and as a consequence of the foregoing allowance, respondent abated $8,525 of the original income tax deficiency assessment of $9,423 for 1985 and fully abated the assessed additions to tax under sections 6653(a)(1) and (2) and 6661 for that year.  The $8,525 abatement represented the tax attributable to the allowance of $30,723 in Schedule C deductions for 1985.  This abatement resulted in a net assessed deficiency in income tax of $898 for 1985.

Also on May 11, 1998, and again as a consequence of the allowance made on the Problem Solving Day, respondent abated $9,453.66 of the original income tax deficiency assessment of

$47,294 for 1986 and fully abated the assessed addition to tax under section 6661 for that year. The $9,453.66 abatement represented the tax attributable to the allowance of $20,222 in Schedule C deductions for 1986. This abatement, together with the $23,785.64 abatement made on May 27, 1996, described supra in D, resulted in a net assessed deficiency in income tax of $14,054.70 for 1986, as well as additions to tax under section 6653(a)(1)(A) and (B) for that year.[10]

Additionally on May 11, 1998, respondent issued petitioner a notice reflecting the above-described abatement of income tax and additions to tax for 1985, as well as an abatement of interest and late payment penalty. The notice also indicated that the amount to be refunded for 1985 was $17,866.18.[11]

Finally on May 11, 1998, respondent issued petitioner a notice reflecting the application of $6,166.80 of the $17,866.18 overpayment for 1985 to petitioner's outstanding liability for 1986. One week later, on May 18, 1998, respondent issued petitioner another notice reflecting the application of $5,891.62 of the remaining overpayment for 1985 to petitioner's outstanding liability for 1986.

---

[10] The net assessed addition to tax under sec. 6653(a)(1)(A) was $703.

[11] Petitioner had been making payments for a number of years against his assessed liability for 1985.

F.  Petitioner's Claim for Abatement

On August 24, 1998, respondent issued petitioner a notice indicating that the balance due on his income tax liability for 1986 was $24,989.86.  Of this amount, $24,230.89 pertained to interest and the balance to one or more penalties.

On February 5, 1999, petitioner filed a claim for abatement of interest and penalties for 1986.

On April 7, 1999, respondent sent petitioner a letter stating that respondent could not allow petitioner's claim for abatement of interest and penalties.  Thereafter, on June 2, 1999, respondent's Appeals Office sent petitioner a Notice of Final Determination formally disallowing petitioner's claim for abatement.  The notice stated, in part, as follows:

> Although delays occurred from the date of the initial
> contact letter * * * until 5/11/98 when the second tax
> abatement was granted, the delay was not caused by a
> Service employee.  The delay appears to have been
> caused when you relied on an unauthorized
> representative to represent you on the examination of
> your 1986 tax return.  When no protest was received in
> response to the audit report mailed to you on 10/31/89
> the case was forwarded for issuance of the statutory
> notice of deficiency.  The statutory notice of
> deficiency was issued 3/19/90 and when you did not file
> a petition with Tax Court within the 90-day period, the
> tax assessment was made 8/20/90.
>
> Subsequent to this, you provided information to warrant
> a $23,785.64 tax abatement on 5/27/96 and furnished
> additional information to justify another tax abatement
> in the amount of $9,453.66 on 5/11/98.
>
> The information was not provided to the examiner prior
> to issuance of the statutory notice of deficiency.
> Once the information was provided in 1996 and 1998, it

was considered and the allowable amount was determined. This delay was not caused by a Service employee's failure to perform a ministerial act.

On November 26, 1999, petitioner filed a petition with this Court for review of respondent's failure to abate interest under section 6404. See Rule 281(a). The petition disputes the sum of $24,989.86 and alleges, in part, that "The interest calculation is due in part to tax [deficiencies] assessed in error."[12]

G. Recomputation of Petitioner's Liability for Interest

Sometime after respondent had formally disallowed petitioner's claim for abatement and petitioner had filed his petition with this Court, respondent realized that petitioner's account for 1986 had been credited with only a portion of petitioner's overpayment for 1985; i.e., only $12,058.42 (i.e., $6,166.80 + $5,891.62) of the $17,866.18 overpayment for 1985 had been credited against petitioner's liability for 1986. See supra E. Respondent corrected this error. As a result, petitioner's liability for interest for 1986 was reduced significantly. As of May 31, 2000, petitioner's liability for interest for 1986 was $12,155.57, or approximately one-half of the amount shown on the notice issued by respondent on August 24, 1998. See supra F.

---

[12] See supra note 2 regarding our lack of jurisdiction to consider any claim for abatement of tax, penalty, or addition to tax.

H.  Petitioner's Allegations Regarding "The Box"

The record in this case includes a copy of a mailing label affixed to a box.  The mailing label identifies petitioner as the addressee and respondent's office in Little Rock, Arkansas, as the sender.  The mailing label is franked, so that no postmark appears on it.

Petitioner alleges that he received the box in the mail at or about the end of 1993 and that it contained some, but not all, of his tax records.  In this regard, petitioner alleges that when respondent arrested Mr. Amigron in May 1991, see supra C, respondent also seized petitioner's tax records, which were in Mr. Amigron's possession, but that respondent subsequently lost some of those records.  Petitioner also alleges that when he received the box, "There was a letter inside signed by some lady" explaining how the records had come into respondent's possession. In responding to the Court's invitation to produce the letter, petitioner testified that he did not have it.

OPINION

In general, interest on a deficiency in income tax begins to accrue on the due date of the return for such tax and continues to accrue, compounding daily, until payment is made.  See secs. 6601(a), 6622(a).

This Court may order an abatement of interest only if there is an abuse of discretion by the Commissioner in failing to abate

interest.  See sec. 6404(i), formerly sec. 6404(g).  In order to demonstrate an abuse of discretion, a taxpayer must prove that the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  See Rule 142(a); Lee v. Commissioner, 113 T.C. 145, 149 (1999); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).[13]

The Commissioner has authority to abate, in whole or in part, an assessment of interest on a deficiency if the accrual of such interest is attributable to an error or delay by an officer or employee of the Internal Revenue Service, acting in his or her official capacity, in performing a ministerial act.  See sec. 6404(e)(1).[14]  An error or delay by the Commissioner can be taken into account only (1) If it occurs after the Commissioner has contacted the taxpayer in writing with respect to the deficiency

---

[13]  Sec. 7491(a) serves to shift the burden of proof if, inter alia, the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B. In general, interest is treated as tax.  See sec. 6601(e)(1). However, interest on an underpayment of tax is imposed by sec. 6601, which is part of subtitle F.  Accordingly, sec. 7491(a) does not apply to the present case.

[14]  Sec. 6404(e) was amended in 1996 by the Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301, 110 Stat. 1452, 1457 (1996), to permit the Commissioner to abate interest with respect to an "unreasonable" error or delay resulting from "managerial" or ministerial acts.  The amendment applies to interest accruing with respect to deficiencies for taxable years beginning after July 30, 1996; accordingly, the amendment is inapplicable to the present case.  See Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).

and (2) if no significant aspect of the error or delay is attributable to the taxpayer.  See sec. 6404(e)(1); Krugman v. Commissioner, 112 T.C. 230, 239 (1999); Nerad v. Commissioner, T.C. Memo. 1999-376.  Section 6404(e)(1) "does not therefore permit the abatement of interest for the period of time between the date the taxpayer files a return and the date the IRS commences an audit, regardless of the length of that time period."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

Congress did not intend for section 6404(e) to be used routinely; accordingly, we order abatement only "where failure to abate interest would be widely perceived as grossly unfair."  Lee v. Commissioner, 113 T.C. 145, 149 (1999); H. Rept. 99-426, supra; S. Rept. 99-313, supra.

Petitioner contends that interest should be abated because: (1) Respondent erroneously determined petitioner's income tax liabilities for 1985 and 1986; (2) respondent seized petitioner's records in May 1991 when Mr. Amigron was arrested and then lost some of those records, thereby depriving petitioner of the opportunity of defending himself against respondent's deficiency determinations; and (3) respondent failed to apply all of petitioner's overpayment for 1985 against petitioner's liability for 1986, thereby overstating interest for 1986 and depriving petitioner of the opportunity of immediately paying such interest

in full.[15]

In order for petitioner to prevail, there must be an error or delay in performing a ministerial act that is attributable to respondent.[16] A "ministerial act" does not involve the exercise of judgment or discretion. Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). Rather, a ministerial act means a procedural or mechanical act that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place. See id. Examples of ministerial acts are provided in the regulations. See sec. 301.6404-2T(b)(2), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). In contrast, a decision concerning the proper application of Federal tax law, or other applicable Federal or

---

[15] Sec. 6404(e) requires not only that a taxpayer identify an error or delay caused by a ministerial act on the Commissioner's part, but also identify a specific period of time over which interest should be abated as a result of such error or delay. See Donovan v. Commissioner, T.C. Memo. 2000-220. In the present case, petitioner has not focused on this correlation between the error or delay attributable to a ministerial act on respondent's part and a specific period of time; rather, petitioner is essentially requesting that all interest with respect to the deficiency in income tax for 1986 be abated. In effect, petitioner is requesting an exemption from interest, rather than an abatement of interest. However, the scope of such request is beyond that contemplated by the statute. See id.

[16] Further, an abatement of interest "only applies to the period of time attributable to the failure to perform the ministerial act." H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208; see supra note 15.

State law, is not a ministerial act. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). The mere passage of time does not establish error or delay in performing a ministerial act. See Cosgriff v. Commissioner, T.C. Memo. 2000-241, (citing Lee v. Commissioner, supra at 150).

For purposes of section 6404(e), an error or delay cannot be considered for the period before April 24, 1989, because that is the date on which respondent first contacted petitioner in writing regarding the deficiency for 1986. See sec. 6404(e)(1); Krugman v. Commissioner, supra; Nerad v. Commissioner, supra.

We turn now to petitioner's three contentions regarding why interest should be abated.

A. Petitioner's First Contention

First, petitioner contends that respondent erroneously determined petitioner's income tax liabilities for 1985 and 1986. However, regardless of whether respondent correctly or incorrectly determined petitioner's income tax liabilities for those years, it is clear that a decision concerning the proper application of Federal tax law, or other Federal or State law, is not a ministerial act. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra; Cosgriff v. Commissioner, supra. Petitioner's first contention is therefore without merit.

B. Petitioner's Second Contention

Second, petitioner contends that respondent seized petitioner's tax records when Mr. Amigron was arrested and then lost some of those records, thereby depriving petitioner of the opportunity of defending himself against respondent's deficiency determinations.

The evidentiary record does not conclusively establish that petitioner's tax records were seized when Mr. Amigron was arrested. However, respondent does not contest the allegation, and the evidentiary record does establish that respondent mailed a box to petitioner, which box (petitioner alleges) contained his tax records. We shall therefore proceed on the basis that petitioner's tax records were seized when Mr. Amigron was arrested in May 1991.

We do not regard the seizure of records in conjunction with an arrest pursuant to a grand jury felony indictment to be a ministerial act within the meaning of section 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987). See Taylor v. Commissioner, 113 T.C. 206 (1999). Petitioner does not appear to contend to the contrary; rather, he alleges that respondent's agents who executed the arrest warrant failed to inventory what was seized and "they did not give me notice on that." However, these allegations are unsupported in the record. Thus, there is no evidence, other than petitioner's

naked allegation, that an inventory was not taken.  See <u>Tokarski</u> <u>v. Commissioner</u>, 87 T.C. 74, 77 (1986) (the Court is not required to accept the self-serving and unsupported testimony of a taxpayer as gospel).  Further, although petitioner might not have <u>received</u> "notice on that", there is no evidence that such notice was not <u>provided</u>.

The true crux of petitioner's contention is that respondent lost part of his tax records and returned only the balance.

To date, the Court has not had occasion to decide whether the loss of a taxpayer's records is a ministerial act within the meaning of section 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[17]  However, we need not decide this legal issue for two reasons:  First, because the factual predicate for petitioner's contention has not been established; and second, because a significant aspect of any error or delay by respondent is attributable to petitioner.

First, petitioner claims that respondent lost part of his tax records.  However, petitioner was unable to describe exactly

---

[17]  We note that the final regulations under section 6404 define a managerial act as "an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel."  See sec. 301.6404-2(b)(1), Proced. & Admin. Regs.; see also H. Rept. 104-506, at 27 (1996), 1996-3 C.B. 49, 75.  We note further that sec. 301.6404-2(b)(1), Proced. & Admin. Regs., is generally applicable only to interest accruing with respect to deficiencies for taxable years beginning after July 30, 1996.

what records were allegedly lost.  Rather, petitioner syllogizes as follows:  He faithfully maintained complete and accurate records that substantiated every dollar of deduction claimed on his income tax returns; when he attended the Problem Solving Day in April 1998, his records substantiated only 85 percent of the total deductions claimed on his Schedule C for 1986; therefore, respondent must have lost the records that would have substantiated the remaining 15 percent of those deductions.

Petitioner's syllogism is, of course, self-serving.  See Tokarski v. Commissioner, supra; cf. Seaboard Commercial Corp. v. Commissioner, 28 T.C. 1034, 1051 (1957) (a taxpayer's income tax return is a self-serving declaration that may not be accepted as proof for the deduction or exclusion claimed by the taxpayer); Halle v. Commissioner, 7 T.C. 245 (1946) (same), affd. 175 F.2d 500 (2d Cir. 1949).  Moreover, the primary premise of the syllogism; i.e., that petitioner maintained impeccable records, is suspect, as demonstrated by the following:

In January 1988, during the course of the examination of petitioner's 1985 income tax return, Mr. Davis, petitioner's certified public accountant and representative, described a telephone conversation with respondent's revenue agent in which the agent was said to state that he was "going to disallow all deductions due to the fact that the amounts originally claimed could not be reconciled to the amounts which were documented upon

[his] audit of my client of [sic] 1985 Form 1040." Later that month, Mr. Davis and/or petitioner attended a conference with the revenue agent's group manager and supplied receipts and canceled checks. However, such documentation was insufficient to avoid the issuance of a notice of deficiency in September 1988, which notice disallowed all of petitioner's Schedule C deductions. Petitioner received the notice but, significantly, did not file a petition with this Court. If petitioner maintained complete and accurate records, we fail to understand why he was unable, even with the help of a certified public accountant, to avoid the total disallowance of his Schedule C deductions for 1985, and further, why he would not have filed a petition with this Court contesting that disallowance.

Second, an error or delay by the Commissioner can be taken into account only if no significant aspect of the error or delay is attributable to the taxpayer. See sec. 6404(e)(1). In the present case, we think that a significant aspect of any error or delay by respondent is attributable to petitioner, as demonstrated by the following:

Respondent never recognized Mr. Amigron as petitioner's representative; rather, respondent undertook to send all correspondence directly to petitioner. Presumably, petitioner received the 30-day letter for 1986 that was mailed to him in September 1989 at his address in Florida and the "final notice"

30-day letter for 1986 that was mailed to him in October 1989; regardless, petitioner received the notice of deficiency for 1986 that was mailed to him in March 1990. Yet petitioner did nothing. He did not protest the 30-day letter; he did not file a petition with this Court; he did not even contact Mr. Amigron to inquire what his supposed representative was doing on his behalf or what his supposed representative recommended be done.

It should be recalled that Mr. Amigron was not arrested until May 1991. Thus, if petitioner had protested the 30-day letter in September or October 1989 or had filed a petition with this Court in March 1990, petitioner would have had the opportunity of substantiating his return with what he alleges were impeccably maintained records.

Further, although petitioner testified that respondent returned his records to him at or about the end of 1993, petitioner did not file an amended return for 1986 until January 1996, some 2 years later. Even then, after respondent's Problem Resolution Office demonstrated a willingness to abate petitioner's 1986 income tax, petitioner failed to produce documentation for his Schedule C deductions. Indeed, it was not until April 1998, yet another 2 years later, that petitioner finally produced such documentation, which respondent promptly accepted.

In view of the foregoing, we conclude that petitioner's

second contention is without merit.

C. <u>Petitioner's Third Contention</u>

Finally, petitioner contends that respondent failed to apply all of petitioner's overpayment for 1985 against petitioner's liability for 1986, thereby overstating interest for 1986 and depriving petitioner of the opportunity of immediately paying such interest in full.

Respondent acknowledges that the notice sent to petitioner on August 24, 1998, erroneously overstated the amount of interest due for 1986. Respondent also acknowledges that "Respondent has, in certain cases, abated interest during the time period between an improper notice and a subsequent corrected notice, consistent with Example (11) of Treas. Reg. § 301.6404-2(c)."[18] See also <u>Krugman v. Commissioner</u>, 112 T.C. at 240, regarding the

---

[18] Sec. 301.6402-2(c), <u>Example 11</u>, Proced. & Admin. Regs., provides as follows:

> A taxpayer contacts an IRS employee and requests information with respect to the amount due to satisfy the taxpayer's income tax liability for a particular taxable year. Because the employee fails to access the most recent data, the employee gives the taxpayer an incorrect amount due. As a result, the taxpayer pays <u>less than</u> the amount required to satisfy the tax liability. Accessing the most recent data is a ministerial act. The Commissioner may (in the Commissioner's discretion) abate interest attributable to any unreasonable error or delay arising from giving the taxpayer an incorrect amount due to satisfy the taxpayer's income tax liability. [Emphasis added.]

Commissioner's concession in respect of a notice that failed to include interest. Indeed, in Douponce v. Commissioner, T.C. Memo. 1999-398, the Court held that the Commissioner's failure to include accrued but unassessed interest in a payout figure given to the taxpayer constituted a ministerial act that justified the abatement of interest.

Douponce v. Commissioner, supra, is distinguishable from the present case. Thus, critical to the Court's holding in Douponce was the fact that the taxpayer had inquired regarding the "total amount due" and after having been given a payoff figure, promptly paid such amount. Some 5 months later, when the taxpayer was notified of his liability for interest, the taxpayer promptly paid that amount, too. In holding that the Commissioner should have abated interest for this 5-month period, the Court stated that "It is reasonable to assume the only reason for the delay * * * was caused by respondent's failure to tell petitioner the correct amounts due when petitioner requested that information". Douponce v. Commissioner, supra.

In sharp contrast with the facts in Douponce v. Commissioner, supra, respondent in the present case overstated the amount of interest due for 1986. Thus, the assumption made by the Court in Douponce regarding "the only reason for the delay" would not seem to be warranted in the present case.

At trial, petitioner professed to rely on the August 1998

notice erroneously overstating the amount of interest due for 1986. In this regard, petitioner testified that "had they had the right figures, I could have settled it back then". However, we are unable to accept this assertion at face value. See Tokarski v. Commissioner, 87 T.C. 74 (1986). Petitioner did not establish that he had the financial resources in August 1998 to completely satisfy his tax liability at that time. Moreover, petitioner did not even make a substantial payment toward his tax liability at that time in order to minimize the further accrual of interest. Further, once respondent corrected the error and recomputed petitioner's liability for interest, petitioner did not pay off such liability.

In view of the foregoing, we conclude that petitioner's third contention is without merit.

D. Conclusion

Consistent with our analysis, we hold that respondent's denial of petitioner's claim for abatement of interest was not an abuse of discretion.

In order to give effect to our holding,

Decision will be entered

for respondent.